## DeVeney *vs.* Gallagher.

1. Courts of equity do not ordinarily restrain, by injunction, the commission of a mere trespass; there must be some great vexation from continued trespasses, or some irreparable mischief, which cannot easily be measured by damages, to authorize such interference.

2. Courts of equity have jurisdiction, in cases of confusion of boundaries, to establish lines; and although they never entertain a simple suit to fix boundaries between individuals where courts of law have jurisdiction, yet when the question is connected with matters that require the interference of equity, as where a defendant has threatened, and has served a formal written notice, that he intends to remove ten inches of the end wall of the complainant's dwelling, which the defendant alleges is upon his land, a court of equity will, to prevent multiplicity of suits, entertain jurisdiction, and settle the boundary, in order to determine whether the complainant is entitled to the continuance of its protection by injunction.

3. Where a deed calls for the line of a street, as a monument, the line of the street, as it is opened and built upon, will be held to be the line intended.

This cause was heard on bill, answer, and proofs.

*Mr. L. Zabriskie*, for complainant.

*Mr. Garrick*, for defendant.

THE CHANCELLOR.

This bill was to restrain the defendant from taking down or removing ten inches of the west end of the dwelling-house of the complainant, which the defendant alleged was upon his land.

Courts of equity do not ordinarily restrain, by injunction, the commission of a mere trespass; there must be some great vexation from continued trespasses, or some irreparable mischief, which cannot be easily measured by money damages, to authorize the interference by injunction. In this case the defendant has threatened, and served a formal written notice, that he intends to remove that part of the complainant's house, which, he alleges, projects over upon his lot. This, though a mere trespass, is an injury of that kind which equity will restrain. A man shall not be disturbed by force in his dwelling-house until the title is settled, which can be done, and the possession recovered by ejectment. This court will grant the relief, provided it is made to appear that the complainant has the right. Under the general prayer for relief, the complainant is entitled to such relief as his case may require. Courts of equity have long entertained jurisdiction, in cases of confusion of boundaries, to establish lines; and although they never entertain a simple suit to fix boundaries between individuals, where courts of law have jurisdiction, yet when the question is, as here, connected with matters that require the interference of equity, they will, to prevent multiplicity of suits, entertain jurisdiction, and settle the boundary. 1 *Story's Eq. Jur.*, § 609, 621. The court, in this case, will ascertain the boundary to settle whether the complainant is entitled to the continuance of its protection by injunction.

The complainant and defendant own lots adjoining each other on the north side of South Sixth street, in Jersey City, between Monmouth street on the west, and Coles street on the east. Both derive title from Bentley and Smith. The complainant's lot is east of the lot of the defendant. Each lot is twenty-one feet seven and one-half inches wide, and ninety-five feet deep. The deed to defendant was given August 1st, 1866; that to complainant July 1st, 1867.

The beginning point in complainant's deed is sixty-five feet seven and a half inches east of the northeast corner of South Sixth and Monmouth streets; that in the deed to the defendant is forty-three feet nine inches east of that corner; the difference being exactly the width of defendant's lot. There were small houses on the rear of the lots, before these conveyances, and a fence between them. The complainant, before he erected the three story frame dwelling-house in question on his lot, procured an experienced city surveyor to locate his lot according to the calls of his deed. This survey placed his west line ten inches west of the fence between the lots, and he proceeded to erect his building on that line. The defendant did not interfere, or give any notice not to erect the building on that line, until it was nearly finished; he then had a survey made by another city surveyor, who located the line between the lots about where the fence had stood, and by which the front of complainant's house was ten inches over that line, and the rear nine and a half inches. The whole question is upon the correctness of these surveys. The measurements of both are, no doubt, correct, for they coincide. The discrepancy arises from a difference in locating the east line of Monmouth street, which is called for as the starting monument in both deeds.

There does not appear in the evidence to be any fixed monument to locate the lines of Monmouth street, nor does it appear how it was laid out or dedicated. It is one of the public streets of Jersey City, subject to the municipal government, which has, by charter, the power " to ascertain

and establish the boundaries of all streets in the city, and to prevent and remove all encroachments upon them."

The city does not appear to have done anything to ascertain the boundaries of Monmouth street. It has been opened, graded, and paved as a public street by the city, and for twelve years or more, substantial and large brick houses have been built upon both sides, thus practically locating the street and its boundaries. These buildings have been permitted by the city government, who have not removed them as encroachments, and, so far as appears, are the only monuments which fix the sides of the street. They were built long before the conveyances to these parties, and were, at that time, the actual boundaries of the street.

The surveyor of the complainant was an experienced city surveyor, who had frequently surveyed and located the lines of Monmouth street, and fixed them by taking these buildings as the true line of the street. On this survey, as before, he located the street by buildings which had been standing for years on the east side of it. He took a large brick building on the southeast corner of Monmouth and South Eighth streets as his guide ; it had stood there for twelve years ; this building was five hundred and eighty feet south of the front line of these lots. He took several other building on the east side of Monmouth street, and north of South Sixth street ; and he also measured from a building on the west side of Monmouth street, one or two blocks north of South Sixth street; this gave the west line of Monmouth street sixty feet, the correct width, distant from the east line, as fixed by him. That this location is correct, according to the location of these buildings, is not disputed by any evidence on the part of the defendant. The complainant's surveyor also proves that the length of the block from the line so fixed by him to the west line of Coles street, as opened and built upon, is four hundred and one feet, instead of four hundred feet, which was supposed to be the length of these blocks, making a foot surplus in this block.

The surveyor of the defendant, in locating the east line of Monmouth street, took for a guide the same brick building, at the southeast corner of Monmouth and South Eighth streets, which the complainant's surveyor had taken. He then took a brick building on the northeast corner of Coles and South Fifth streets as his other monument, and he measured four hundred feet westwardly from that, to ascertain his second point on the east side of Monmouth street, and located the east side of Monmouth street by running a straight line between these two points. Why he selected a building on Coles street, instead of those on Monmouth street, to locate the lines of the latter street, does not appear. It does not appear that he observed the position of this line as to the buildings on Monmouth street, north of South Sixth street, that had stood for years. Nor does it appear that this surveyor had ever before located the lines of Monmouth street, or knew by experience anything about them. Nor does it appear that these streets were laid out by any proper authority four hundred feet apart. Yet this assumption is the whole foundation of his survey, and is the cause of the difference between him and the complainant's surveyor. Complainant's surveyor testifies that his line is four hundred and one feet from the actual line of Coles street. The defendant's surveyor takes his south point four hundred and one feet from Coles street, and his north point four hundred feet from Coles street, and then runs a line, necessarily obliquely, to both streets; between these two points the distance is eight hundred and forty feet. The foot would diminish to nine inches in the two hundred feet to complainant's house.

The assumption of four hundred feet, as the correct width of the block, is without authority in the evidence. Were it otherwise, there is no warrant for assuming that the location of one house in Coles street is more correct than that of several in Monmouth street. The question is the correct location of the street, and how it is as to Monmouth street.

The only location is the actual one by buildings erected by the abutters, and acquiesced in by the city government, who alone have authority to ascertain the boundaries, and remove the buildings. The line located by the complainant's surveyor, parallel to the west side of Monmouth street, and not the diagonal line fixed by the surveyor of the defendant, must be taken to be the true line of Monmouth street, as actually located. This is the only monument called for by either deed. Neither deed mentions the fence or the houses standing on the lots, or the row of eight houses. Bentley and Smith owned both lots, and had the right to make the division line in their sale where they pleased. They may, and probably did, intend to convey to each a house and lot, as they were built and fenced off. But they have expressed no such intention, but have chosen to make, and the grantees to accept, conveyances calling for the street as a monument. And it has been held by the Supreme Court, that when a deed calls for the line of a street as a monument, it shall be held to mean the line of the street as opened and built upon, and not the line as laid out, when not ascertained or acted upon. *Smith* v. *The State,* 3 *Zab.* 130; *Den d. Haring* v. *Van Houten,* 2 *Zab.* 61.

Were this a suit to reform and correct the deed according to the intention of the parties, and there was evidence, as there is not here, that the intention was to convey to the defendant his lot, as built upon and fenced in, the result might be different; but the question here is simply upon the effect of the deed as made and delivered. According to the plain effect of it, the complainant proceeded, in good faith, to put up his house, and the defendant permitted him to go on without objection, until it was almost finished.

The line upon which the complainant's house is erected must be held to be the true line between the lot of the complainant and that of the defendant; and the defendant must be perpetually enjoined from disturbing or interfering with the house.